United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Carlos Alonso, as guardian of Angie Alonso, Plaintiff. | ) ) ) | |
| v. | ) ) | Civil Action No. 18-23668-Civ-Scola |
| Dr. Gladys Y. Alonso, M.D., Defendant. | ) ) ) | |

**<u>Opinion Order on Motion to Dismiss</u>**

Carlos Alonso ("Carlos"), as guardian of his son Angie Alonso ("Angie"), sues Defendant Dr. Gladys Alonso. M.D. ("Gladys"), Angie's former physician, for injunctive relief under Title III of the Americans with Disabilities Act (the "ADA," 42 U.S.C. § 12182), and other claims under Florida law.

Now before the Court is a motion to dismiss filed by the Gladys. (the "Motion," ECF No. 41.) Having considered the parties' submissions and the applicable law, the Court **denies** the Motion (**ECF No. 41**) as set forth below.

## 1. <u>Background</u>[1]

Carlos is the legal guardian for his permanently disabled adult son, Angie, with whom he lives in Hialeah, Florida. Angie suffers from, among other things, cognitive impairments, severe cerebral palsy and spasticity resulting from hypoxia during a complex childbirth. (ECF No. 40 at ¶ 2.) These conditions have rendered Angie unable to walk without the assistance of others. As such, he must use a wheelchair when traveling outside his home. (*Id.*) Angie cannot meaningfully speak or communicate with others and requires twenty-four-hour assistance to complete tasks of daily living, such as bathing, eating and using the bathroom. (*Id.*) This assistance is provided almost exclusively by Carlos and Angie's mother.

Angie received Home Health Aid Services ("HHAS") through an assigned Personal Care Assistant ("PCA") through Florida's Medicaid program. (*Id.* at ¶¶ 7, 8, 19-21.) "This PCA worker would typically visit Angie's home for three (3) hours to assist Angie with everyday living activities that he could not perform on his own." (*Id.* at ¶ 20.) To receive this service, Angie was required to obtain a

---

[1] The Court accepts as true the facts pled in the Complaint. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

medical assessment every sixty-days with a physician who certified to the State of Florida that Angie still required a PCA. (*Id.*) From September 2012 through December 2016, Gladys was that physician for Angie. (*Id.* at ¶¶ 3, 15, 22.)

At the beginning of their relationship, Angie would visit Gladys' medical office in Hialeah (the "Office"). (*Id.* at ¶ 5.) But "Angie's wheelchair could not easily fit through the elevator doors and office door" and the Office's "waiting room was too small for a handicapped person like Angie." (*Id.* at ¶ 16.) So, to complete the assessments required for PCA services, the parties sought alternative arrangements. Ultimately, Angie agreed to forgo "receiving medical care at the Office," and instead Gladys "would visit Angie in his apartment." (*Id.* at ¶ 17.)

Home visits occurred sporadically. "From 2012 to the end of the physician-patient relationship in 2016, [Gladys] continually missed scheduled meetings with Angie." (*Id.* at ¶ 18.) Her medical staff also "did not respond to Angie's case worker when [Gladys] failed to visit every month." (*Id.*) By "ignoring her obligation to do a medical assessment of Angie and submit every (60) days the paperwork to the State of Florida," Angie "lost hundreds of hours of service from the PCA." (*Id.* at ¶¶ 19-21.) "The only replacement for this worker was through [Carlos] and Angie's mother." (*Id.* at ¶ 21.)

In late 2016, Angie received emergency treatment for medical ailments that Carlos claims "could have been ameliorated if [Gladys] had been providing medical care to Angie." (*Id.* at ¶ 24.) At that point, Carlos began looking for a new physician for Angie and eventually settled on a doctor at the Lennar Center in Coral Gables, Florida. (*Id.* at ¶¶ 9, 26.) But traveling from Hialeah to Coral Gables can take over an hour and making this trip "is an arduous task for Angie and his parents." (*Id.* at ¶¶ 9, 42.) Indeed, Angie's "actual spasticity" causes "him a lot of pain when sitting in the wheelchair or traveling in the car for more than thirty (30) minutes." (*Id.* at ¶¶ 9, 42.) Because of this, "Angie would reasonably intend to stay a medical patient of" Gladys' Hialeah medical practice "but for [Gladys'] failure to reasonably accommodate [Angie's] disability." (*Id.* at ¶ 41.)

On September 7, 2018, Carlos filed this lawsuit *pro se*. (ECF No. 1.) He served Gladys on November 6, 2018. (ECF No. 20.) Gladys failed to timely respond to the complaint and the clerk entered default against her on December 6, 2018. (ECF No. 25.) Before Carlos moved for default judgment, on January 10, 2019, Gladys appeared through counsel and moved to vacate clerk's default. (ECF No. 31.) She attributed her failure to timely respond to this case to her practice of "review[ing] her incoming mail on a monthly basis." (*Id.* at p. 2.) Over Carlos' objection, the Court granted that motion and vacated clerk's default on January 15, 2019. (ECF No. 33.) Thereafter, counsel appeared on behalf of Carlos and the Court ordered the complaint replead. (ECF Nos. 36, 37.)

On February 28, 2019, Carlos, through counsel, filed the operative amended complaint asserting three causes of action: (1) Count I under Title III of the ADA for declaratory and injunctive relief, seeking an order "requiring [Gladys] to alter the Office and/or its facilities to make them accessible to an usable by individuals with disabilities," like Angie, (ECF No. 40 at pp. 5-8); (2) Count II for breach of oral contract under Florida law, (*id.* at pp. 8-9); and (3) Count III for promissory estoppel under Florida law, (*id.* at p. 9). Carlos asserts federal question jurisdiction for Count I and supplemental jurisdiction for Counts II and III. (*Id.* at ¶ 10.)

Gladys moves to dismiss under Rule 12(b)(6) and 12(b)(1) on two grounds: (1) that Count I for prospective injunctive relief under Title III of the ADA is time-barred, (ECF No. 41 at pp. 4-6); and should the Court dismiss the ADA claim, (2) that the Court lacks supplemental jurisdiction over Counts II and III, brought under Florida law, (*id.* at pp. 6-8). Carlos opposes the Motion. (ECF No. 42.) Gladys filed a reply brief. (ECF No. 43.)

## 2. **Legal Standard**

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. **Count I for Injunctive Relief Under Title III of the ADA is Not Time-Barred**

Gladys claims that Count I under Title III of the ADA is time-barred on the face of the amended complaint. Specifically, Gladys argues that Count I accrued in September 2012, when Carlos first learned of the alleged ADA violations at the Office. Applying Florida's four-year statute of limitations, Gladys submits that statute of limitations expired in September 2016 and that the claim was time-barred in September 2018 when Carlos initiated this suit. Carlos disputes that Count I accrued in September 2012. Because Carlos is seeking prospective

injunctive relief to remedy alleged continuing violations of Title III of the ADA, the Court finds that Count I is not time-barred and denies the Motion.

The ADA does not provide a statute of limitations so courts "apply the most analogous state statute of limitations." *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 841 (11th Cir. 2017). "The most analogous state limitations period comes from personal injury actions, which in Florida is a four-year period, Fla. Stat. § 94.11(3)." *Id.* (citing *Everett v. Cobb Cty. Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998)). This limitations period starts on the date a plaintiff's claim accrues. *Everett*, 138 F.3d at 1410.

Accrual dates vary based on the nature of the relief sought. For example, claims for legal relief under Title II of the ADA based on discrete, past acts of discrimination "accrue when the plaintiff is informed of the discriminatory act." *Id.* Title III claims for injunctive relief, however, are different. In contrast to damages, injunctions are forward-looking remedies. *Strickland v. Alexander,* 772 F.3d 876, 883 (11th Cir. 2014) ("injunctions regulate future conduct only; they do not provide relief for past injuries already incurred and over with"). And Title III suits seek to remedy present acts of discrimination to ensure disabled individuals are provided full and equal enjoyment of places of public accommodation in the future. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329-30 (11th Cir. 2013). What a plaintiff knew at some point in the past does not speak to whether prospective injunctive relief is necessary to remedy existing discrimination at a place of public accommodation. Put another way, Title III suits are not time-barred where the relief sought is an injunction to prevent "threatened future injur[ies]." *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("A plaintiff has no cause of action under the ADA for an injury that occurred outside the limitations period. But he or she has a cause of action, and is entitled to injunctive relief, for an injury that is occurring within the limitations period, as well as for threatened future injury."); *see also Silva*, 856 F.3d at 841 n.16 (approving application of the "continuing violations" doctrine to Title III claim for injunctive relief, and distinguishing discrete acts of discrimination from ongoing, continuing violations).

Here, Count I is a claim for injunctive relief under Title III of the ADA. Carlos alleges that Gladys violated the ADA because "the doors and waiting area in [the O]ffice are not wide enough to accommodate an individual with a wheelchair," like Angie. (*Id.* at ¶ 33.) He seeks an injunction requiring Gladys to remedy these alleged violations and make the Office "accessible to and usable by individuals with disabilities to the full extent required by Title III." (ECF No. 40 at ¶ 45.) If the Office were ADA compliant, Carlos claims that Angie would "reasonably intend to stay a medical patient" of Gladys. (*Id.* at ¶¶ 41-43.) Indeed, doing so would relieve Angie and his family of the burden of traveling to Coral

Gables for medical appointments in light of Angie's disabilities. (*Id.* at ¶ 42.) On those allegations, the Court finds that Count I seeks an injunction to prevent threatened future injuries resulting from alleged ADA violations that presently exist at the Office. That claim, thus, is not time-barred. *Pickern*, 293 F.3d at 1136-37; *Silva*, 856 F.3d at 841 n.16.

Further, because Gladys' argument that the Court lacks supplemental jurisdiction over the remaining Florida claims is contingent on the dismissal of Count I, the Court declines to dismiss Counts II and III at this time.

### 4. Conclusion

In sum, the Court **denies** the Motion (**ECF No. 41**). Gladys shall answer the amended complaint within the time required by the Federal Rules of Civil Procedure.

**Done and ordered**, in Chambers, at Miami, Florida, on July 25, 2019.

_____
Robert N. Scola, Jr.
United States District Judge