| | |
|---|---|
| Carlos Alonso, as guardian of Angie Alonso, Plaintiff. | )<br>)<br>) |
| v. | ) Civil Action No. 18-23668-Civ-Scola<br>) |
| Dr. Gladys Y. Alonso, M.D., Defendant. | )<br>) |

### Order on Motion to Dismiss

Carlos Alonso ("Carlos"), as guardian of his son Angie Alonso ("Angie"), sues Defendant Dr. Gladys Alonso. M.D. ("Gladys"), Angie's former physician, for injunctive relief and compensatory damages under Title III of the Americans with Disabilities Act (the "ADA," 42 U.S.C. § 12182), the Rehabilitation Act (29 U.S.C. § 794) and other claims under Florida law.

Now before the Court is Gladys's motion to dismiss. (ECF No. 62.) She argues that the Carlos's claims regarding the inaccessibility of her office are moot because she moved her office to a new location since this lawsuit was filed. The Court agrees that the claims are moot, and therefore **grants in part** Dr. Gladys's motion to dismiss (**ECF No. 62**).

**1. Background**

Carlos is the legal guardian for his permanently disabled adult son, Angie, with whom he lives in Hialeah, Florida. Angie suffers from, among other things, cognitive impairments, severe cerebral palsy and spasticity resulting from hypoxia during a complex childbirth. (ECF No. 61 at ¶ 2.) These conditions have rendered Angie unable to walk without the assistance of others. As such, he must use a wheelchair when traveling outside his home. (*Id.*) Angie cannot meaningfully speak or communicate with others and requires twenty-four-hour assistance to complete tasks of daily living, such as bathing, eating and using the bathroom. (*Id.*) This assistance is provided almost exclusively by Carlos and Angie's mother.

Angie received Home Health Aid Services ("HHAS") through an assigned Personal Care Assistant ("PCA") through Florida's Medicaid program. (*Id.* at ¶¶ 7, 8, 21-23.) "This PCA worker would typically visit Angie's home for three (3) hours to assist Angie with everyday living activities that he could not perform on his own." (*Id.* at ¶ 22.) To receive this service, Angie was required to obtain a medical assessment every sixty-days with a physician who certified to the State

of Florida that Angie still required a PCA. (*Id.*) From September 2012 through December 2016, Gladys was that physician for Angie. (*Id.* at ¶¶ 3, 15, 22.)

At the beginning of their relationship, Angie would visit Gladys' medical office in Hialeah (the "Office"). (*Id.* at ¶ 5.) But "Angie's wheelchair could not easily fit through the elevator doors [and] office door" and the Office's "waiting room was too small" for a handicapped person like Angie. (*Id.* at ¶ 17.) So, to complete the assessments required for PCA services, the parties sought alternative arrangements. Ultimately, Angie agreed to forgo receiving medical care at the Office, and instead Gladys "would visit Angie in his apartment." (*Id.* at ¶ 18.)

Home visits occurred sporadically. "From 2012 to the end of the physician-patient relationship in 2016, [Gladys] continually missed scheduled meetings with Angie." (*Id.* at ¶ 20.) Her medical staff also "did not respond to Angie's case worker when [Gladys] failed to visit every month." (*Id.*) By ignoring her "obligation to do a medical assessment of Angie and submit every (60) days the paperwork to the State of Florida," Angie "lost hundreds of hours of service from the PCA." (*Id.* at ¶¶ 20-23.) "The only replacement for this worker was through [Carlos] and Angie's mother." (*Id.* at ¶ 23.)

In late 2016, Angie received emergency treatment for medical ailments that Carlos claims "could have been ameliorated if [Gladys] had been providing medical care to Angie." (*Id.* at ¶ 26.) At that point, Carlos began looking for a new physician for Angie and eventually settled on a doctor at the Lennar Center in Coral Gables, Florida. (*Id.* at ¶¶ 9, 27.) But traveling from Hialeah to Coral Gables can take over an hour and making this trip "is an arduous task for Angie and his parents." (*Id.* at ¶¶ 9, 44.) Indeed, Angie's "actual spasticity" causes "him a lot of pain when sitting in the wheelchair or traveling in the car for more than thirty (30) minutes." (*Id.* at ¶¶ 9, 42.) Because of this, "Angie would reasonably intend to stay a medical patient of" Gladys' Hialeah medical practice "but for [Gladys'] failure to reasonably accommodate [Angie's] disability." (*Id.* at ¶ 43.)

On August 30, 2019, Carlos filed his second amended complaint, which brings architectural barrier claims pursuant to the ADA (count I), failure to make reasonable policy changes under the ADA (counts II-IV), retaliation in violation of the ADA and the Rehabilitation Act (counts V and VII), intentional discrimination in violation of the Rehabilitation Act (count VI), breach of contract (count VIII), promissory estoppel (count IX), and intentional infliction of emotional distress (count X). (ECF No. 61.) Since the Plaintiff filed suit, the Defendant has moved offices. She no longer uses the premises with the allegedly offending barriers to access, and now practices medicine exclusively from a new location. (ECF No. 63 ¶¶ 1-6.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

#### A. Plaintiff's architectural barrier ADA claims are moot.

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004)

(citation omitted). "The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy. A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 1282 (citation omitted). "If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Id.* (citation omitted). When considering a defendant's argument that facts now exist that deprive the court of subject matter jurisdiction, a court may consider extrinsic evidence such as testimony and affidavits. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).

The voluntary-cessation doctrine is an exception to the general rule that a case is mooted by the end of the offending behavior. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur*." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189). "The formidable, heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 190). Under the voluntary-cessation doctrine, a court must evaluate a defendant's assertion that the case is moot because the offending behavior has ceased by analyzing three factors: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Id.* at 1184.

"ADA-architectural-barrier cases are a unique subset of voluntary-cessation-doctrine cases." *Houston v. 7-Eleven, Inc.*, 2014 WL 351970, *2 (S.D. Fla. Jan. 31, 2014) (Scola, J.). While these cases are not always a perfect fit within the framework of the three factors discussed in *Sheely*, the nature of structural modifications (as opposed to simply a change in a discriminatory policy) still satisfies the ultimate question that the voluntary-cessation doctrine asks (*i.e.,* is it absolutely clear that the allegedly wrongful behavior could not

reasonably be expected to recur). *Id.* Several courts have found that where structural modifications have been undertaken to make the facility ADA compliant the case is moot. *See, e.g., Houston,* 2014 WL 351970 at *3; *Harty v. North Lauderdale Supermarket, Inc.,* 2015 WL 4638590, *3 (S.D. Fla. Aug. 4, 2015) (Bloom, J.); *Access 4 All, Inc. v. Bamco VI, Inc.,* 2012 WL 33163, *6 (S.D. Fla. Jan. 6, 2012) (Cohn, J.); *Nat'l Alliance for Accessibility, Inc. v. Walgreen Co.,* No. 10-Civ-780-J-32-TEM, 2011 WL 5975809, *3 (M.D. Fla. Nov. 28, 2011) (collecting cases).

Here, the Defendant has not demonstrated that her facility complies with the ADA. Nevertheless, the ultimate question (*i.e.* whether it is absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur) has been satisfied. The fundamental rationale supporting these cases is that the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct. *Kallen v. J.R. Eight, Inc.,* 1:19-cv-22069775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) (King, J.) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone.") (internal punctuation & quotation omitted). As Gladys has moved her office to a new location, the conduct that Carlos alleges is wrongful—maintaining elevator doors, office doors, and a waiting area that are not wide enough to accommodate a wheel chair—cannot be reasonably expected to recur. Indeed, moving offices may have been the easiest way to comply with the ADA and accommodate patients like Angie.

### B. Plaintiff's remaining ADA claims are not moot.

Carlos's claims that she violated the ADA by failing to make reasonable modifications to her policies, practices, and procedures are not moot. Likewise, Carlos's claims that Gladys retaliated against him because of his complaints regarding deficiencies in Angie's care are not moot. *Houston* explains that dismissal was proper because "[i]n this case, 7–Eleven is not alleged to have engaged in a discriminatory policy or practice against disabled persons" and further that "Houston's sworn statement clarifies that his complaints against 7–Eleven's 7090 Store relate *only* to the architectural barriers, and do not involve any allegedly discriminatory policies, practices, or procedures." 2014 WL 351970, *4. Here, Gladys's affidavit does not allege that she has adopted new policies that comply with the ADA that could moot the policy-related claims.

Moreover, even if she alleged that she had changed her policies, the doctrine of voluntary cessation requires that the remaining ADA claims survive dismissal. As discussed above, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to

his old ways." *Sheely*, 505 F.3d at 1183. Instead, a case "*might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur.*" *Id.* at 1184. Changing one's policy is different from physically moving office spaces because a policy can easily revert back after the suit's dismissal, while violations stemming from one's old office space cannot reasonably be expected to recur. *See id.* at 1189 (claims are not moot because "it may well calculate that its new policy is no longer the preferable course of action and revert to the old policy it prefers and apparently believes to be legal.").

### C. The Plaintiff stated a claim under the Rehabilitation Act.

Gladys argues that Carlos failed to state a claim under section 504 of the Rehabilitation Act because he did not state any facts supporting the conclusory allegation that she discriminated against Angie "solely" due to his disability. (ECF No. 62 at 9-10.) Carlos's claim is not deficient on this basis.

First, the Defendant only cites a summary judgment case that is not relevant here. *See Booth v. Houston*, 58 F. Supp. 3d 1277 (M.D. Ala. 2014). Second, the Defendant's allegations in her affidavit, that her decisions regarding providing home care to Angie was not motivated by his disability, cannot be examined at the motion to dismiss stage. "Unlike other types of motions to dismiss, a Rule 12(b)(6) motion to dismiss is to be determined only on the facts alleged within the four corners of the complaint and the documents attached to the complaint or directly referred to in the complaint." *Scottsdale Ins. Co. v. ULGM, Inc.*, 2014 WL 11906638, *2 (S.D. Fla. July 14, 2014). Dismissal based on Gladys's affidavit alleging that she was not motivated by Angie's disability is not proper.

### D. The Plaintiff failed to state a claim for breach of contract and promissory estoppel.

Section 766.203, Florida Statutes, imposes pre-suit requirements to be fulfilled before a plaintiff may bring a claim for medical negligence. Specifically, the statute provides that "presuit investigation of medical negligence claims and defenses…shall apply to all medical negligence…claims and defenses." Fla. Stat. 766.203. The term medical negligence is defined by section 766.202(6) to mean "medical malpractice, whether grounded in tort or in contract." Fla. Stat. § 766.202(6). "In determining whether a claim is for general negligence or medical negligence, the question is whether the plaintiff must rely upon the medical negligence standard of care in order to prove the case." *Hunt v. Gualtieri*, 2016 WL 7034412, *10 (M.D. Fla. Dec. 2, 2016) (citing *Tenet S. Fla. Health Sys. V. Jackson*, 991 So. 2d 396, 399 (Fla. 3d DCA 2008)). "In order to qualify as a

medical negligence claim, the wrongful act alleged must be directly related to the improper application of medical services and the use of professional judgment or skill." *Pettinga v. Metabolic Research Institute, Inc.*, 2014 WL 12452443, *3 (S.D. Fla. May 6, 2014) (Ryskamp, J.) (citing *Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469 (Fla. 3d DCA 2006)).

Carlos's breach of contract and promissory estoppel claims against Gladys are based on Carlos's allegations that Gladys failed to provide medical care and failed to refer Angie to another medical specialist. (ECF No. 61 at ¶¶ 112, 118, 124.) As pled, the complained conduct of failing to provide appropriate medical care falls within the definition of medical negligence because they relate to the improper application of medical services. *See Pettinga*, 2014 WL 12452443 at *4 (plaintiff's breach of contract claims "fall squarely within the definition of medical negligence" and thus are dismissed with prejudice for failure to comply with the pre-suit requirements). These claims are therefore dismissed for failure to comply with Florida's pre-suit screening requirements. *Id.*

### E. The Plaintiff failed to state a claim for intentional infliction of emotional distress.

A claim for intentional infliction of emotional distress is sufficiently pled only if the plaintiff has alleged that the defendant engaged in "extreme and outrageous conduct" that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Paul v. Humana Medical Plan, Inc.*, 682 So. 2d 1119, 1121 (Fla. 4th DCA 1996). The complained conduct here does not reach the high standard for intentional infliction of emotional distress. *See id* (claim that the doctors acted with extreme and outrageous conduct in failing to provide adequate medical care to increase their profits is not extreme and outrageous conduct). Therefore, the Court dismisses this claim with prejudice.

### 4. Conclusion

In sum, the Court **grants in part** Gladys's motion to dismiss (**ECF No. 77**). The Court dismisses Carlos's architectural barrier claims as moot and his breach of contract, promissory estoppel, and intentional infliction of emotional distress claims because he failed to state a claim. The Court dismisses each these claims with prejudice.

**Done and ordered** in chambers, at Miami, Florida, on October 17, 2019.

_____
Robert N. Scola, Jr.
United States District Judge